**Frank AFRICA**

v.

**The STATE OF PENNSYLVANIA, Leroy S. Zimmerman, Attorney General, Bureau of Corrections, Ronald Marks (Commissioner of B.O.C.).**

Civ. A. No. 81–2828.

United States District Court,
E. D. Pennsylvania.

Aug. 21, 1981.

Frank Africa, pro se.

State of Pennsylvania, Leroy S. Zimmerman, Atty. Gen., Bureau of Corrections, Harrisburg, Pa., Ronald Marks (Commissioner of B.O.C.), Mark N. Cohen, Deputy Atty. Gen., Commonwealth of Pennsylvania, Philadelphia, Pa., for defendants.

## MEMORANDUM AND ORDER

HANNUM, District Judge.

The plaintiff filed an application for injunctive relief on July 16, 1981 by which he seeks an order either requiring state prison authorities to provide him an allegedly special religious diet while incarcerated at a state institution or requiring that he be maintained at a county institution where his dietary requisites may continue to be satisfied. The Court made an earlier recitation at the injunction hearing on July 27, 1981 concerning the extension of emergency relief in order to preserve the status quo ante as well as concerning several procedur-

al issues and these matters will not be discussed again. The only comment that the Court will make in this regard concerns its endeavor to proceed as expeditiously as possible in order to avoid federal interference with the supervision and regulation of state prison facilities. Absent existing constitutional considerations, such interference would be unjustifiable and the Court is cognizant that it has minimally interfered during the pendency of this action while uncertain whether constitutional considerations existed. *See generally Bradshaw v. Cuyler*, No. 81–1870 (E.D.Pa., May 29, 1981). Accordingly, the Court will proceed to a decision on the merits of the plaintiff's application. Of course, this decision will implicitly contain findings of fact and conclusions of law pursuant to F.R.Civ.P. 52(a).

▆ Initially, the Court notes that the plaintiff has essentially requested the alternate relief earlier related. Because of the operation of Pa.Cons.Stat.Ann. tit. 42, § 9762 and because the plaintiff was sentenced to serve a period of incarceration in excess of five (5) years, one of the alternate requests for relief is wholly unavailable. Pa.Cons.Stat.Ann. tit. 42 § 9762 provides as follows:

> All persons sentenced to total or partial confinement for:
>
> (1) maximum terms of five or more years shall be committed to the Bureau of Correction for confinement. . . .

The plaintiff's maximum term exceeds five years and, accordingly, the state Bureau of Corrections and not the County of Philadelphia prisons has jurisdiction. The requested relief of continued maintenance in a county facility is thus wholly unavailable to the plaintiff. The Court will direct its attention to a determination concerning the plaintiff's entitlement, if any, to a special and allegedly religious diet while incarcerated at a state prison facility such as Graterford.

As respects the merits of the plaintiff's application for relief requested and thus narrowed, the Court is confronted with an inquiry that involves several interrelated issues. First and foremost, the Court must determine whether MOVE may be classified as a "religion" within the purview of the first amendment and thus entitled to first amendment protections. In this regard, the Court notes that the plaintiff has raised the Eighth Amendment for the first time in his Memorandum. *See* Docket Entry No. 11, page 7. The underlying basis for its assertion are first amendment arguments and this will be the scope of the Court's inquiry. Second and closely related to the first level of inquiry, the Court must determine whether the first amendment envisions the relief requested by the plaintiff in his application. In essence, whether the first amendment by its operation requires state prison officials to affirmatively provide to the plaintiff his special and allegedly religious diet or does the first amendment merely require the defendants not to preclude others from supplying to the plaintiff his dietary staples. Finally and of course depending upon the resolution pertaining to the first two (2) levels of inquiry, the Court must determine whether a legitimate and reasonably exercised penological interest outweighs any infringement upon the plaintiff's purported first amendment protections.

▆ The Court will first discuss the question whether MOVE may be classified as a "religion" within the purview of the first amendment. Before undertaking this discussion, however, it must be noted that no case has been cited by the parties nor revealed by the Court's research in which the present issue has been decided. Accordingly, a definitional approach to the inquiry must be utilized. As the district court stated in *Malnak v. Yogi*, 440 F.Supp. 1284, 1315 (D.N.J.1977), *aff'd per curiam*, 592 F.2d 197 (3d Cir. 1979):

> When courts are faced with forms of the press or forms of religion unknown in prior decisional law, they must look to the prior interpretations of the constitutional provisions for guidance as to the substantive characteristics of theories or practices which have been found to constitute religion under the first amendment.

While *Malnak v. Yogi, supra* was an establishment clause case rather than a free exercise case as thus presented, the Court considers the views expressed in *Malnak v. Yogi, supra* as helpful guidance.

As earlier related, the threshold issue concerns "whether the beliefs professed are sincerely held and whether they are, in their own scheme of things, religious." *United States v. Seeger*, 380 U.S. 163, 185, 85 S.Ct. 850, 863, 13 L.Ed.2d 733 (1964). *See also Theriault v. Carlson*, 495 F.2d 390, 395 (5th Cir. 1974). The subjective characterization of the proponent may be considered in this regard but it is not, of course, determinative. *See Welsh v. United States*, 398 U.S. 333, 90 S.Ct. 1792, 26 L.Ed.2d 308 (1970); *Malnak v. Yogi, supra* at 1314 & 1319. Rather, the inherently vague definitional approach cogently provided in *Malnak v. Yogi*, 592 F.2d 197 (3d Cir. 1979) by Judge Adams in his concurring opinion will be referenced.

The Court finds that the plaintiff has failed to satisfy the first level of inquiry; that is, the Court finds that MOVE is not a religion within the purview and definition of the first amendment. In essence, the Court finds that MOVE is merely a quasi-back-to-nature social movement of limited proportion and with an admittedly revolutionary design. *See* Notes of Testimony, pages 43–47. In this regard, the Court notes that the plaintiff's testimony revealed only that MOVE was concerned with concepts of health and a return to simplistic living. Its precepts are concerned only with a social philosophy and thus quite apart from a religion within the purview of the first amendment. While MOVE members may respect and respond to religious concepts, these concepts are not subsumed by the MOVE ideology. Rather MOVE exists, as do virtually all other organizations in our society, independent of religion and with separate and distinct purposes while still respecting and abiding by external religious principles. *See* Notes of Testimony, pages 39–74. As a consequence, the Court finds that MOVE, and more particularly the plaintiff, are not entitled to the first amendment protections and rights respecting the exercise of religion.

Notwithstanding the Court's ruling that MOVE is not a "religion" within the purview of the first amendment, several matters may be additionally addressed for the sake of practicality. Of course, it will be assumed arguendo for the purpose of addressing these additional points that the Court determined MOVE to be a religion. First and as respects the second level of inquiry earlier related, the Court does not find persuasive the plaintiff's assertion that the state prison authorities have the affirmative duty to provide the plaintiff his dietary requisites. In *Cruz v. Beto*, 405 U.S. 319, 323, 92 S.Ct. 1079, 1082, 31 L.Ed.2d 263 (1972), Chief Justice Burger stated the following in a concurring opinion:

> There cannot possibly be any constitutional or legal requirement that the government provide materials for every religion and sect practiced in this diverse country. At most, Buddhist materials cannot be denied to prisoners if someone offers to supply them.

Implicitly, the concept that "the free exercise of religion has two aspects—the freedom to believe, which is absolute, and the freedom to practice, which is not" was recognized. *Loney v. Scurr*, 474 F.Supp. 1186, 1196 (S.D.Iowa 1979). *See also Kennedy v. Meacham*, 540 F.2d 1057, 1061 (10th Cir. 1976); *Theriault v. Silber*, 453 F.Supp. 254, 262 (W.D.Tex.1978). Accordingly, the Court does not consider it an affirmative duty imposed upon state prison authorities to provide the plaintiff his dietary requisites. The plaintiff has proposed no alternate manner or method for the provision of his rations and thus the Court cannot consider the practicality or constitutionality of alternatives.

Second, the Court notes that the special diet requested by the plaintiff is not a mandatory aspect of MOVE's philosophy. In a document marked and introduced as plaintiff's exhibit number one (1) and captioned "The Move Organizations Religious Diet" it is stated that:

> because there are family in the Move organization still running clear of prepar-

ed food, there will be members requesting food that is not listed in Move's religious diet which is understandable and expected, as everybody in Move understands people coming to Move with customs other than Move's must run clear of these customs at their own pace, without threats of applied pressure to do otherwise, for all Move people fully understand "When you know no more you can be no more."

Thus it is anticipated and even expected that deviation from the proposed diet will occur. This fact unequivocally establishes that to comply with the MOVE proposed or preferred diet is merely a choice of personal preference. It is axiomatic that the free exercise clause of the first amendment does not offer its protections to mere personal preferences. *See Wisconsin v. Yoder*, 406 U.S. 205, 216, 92 S.Ct. 1526, 1533, 32 L.Ed.2d 15 (1972). In this regard, in order to qualify for such protection, the diet would have had to "stem from one's faith and be fundamental to that faith." *Womens' Services, P.C. v. Throne*, 483 F.Supp. 1022, 1040 (D.Neb.1979), *citing Teterud v. Burns*, 522 F.2d 357, 360 (8th Cir. 1975). Additionally in this regard, the Court notes that all MOVE members presently incarcerated are not practicing an alleged MOVE preferred diet. On Wednesday, August 19, 1981, I visited Graterford Prison with Daniel D. Pipitone, Esquire, law clerk to me and there learned that two (2) MOVE members, inmates there, Gerald Ford Africa and Michael Africa adhere to meals served. Thus, the language contained in *Anderson v. Wolf*, 347 F.Supp. 887, 890 (D.Neb.); *aff'd*, 468 F.2d 252 (8th Cir. 1972), is appropriate:

> [A prison] is not constitutionally required to make exceptions in its orderly routine to provide for the exercise of dietary practices, where, as here, the evidence shows that those practices are adopted

differently by different individuals and differently at different times by the same individual and when the specific practice is not required by a tenet of the organized faith to which the persons belong. *See also* Docket Entry No. 11, page 7, first full paragraph.

As a consequence of the Court's ruling, the plaintiff's application for injunctive relief will be denied. The Court's Order of July 29, 1981 is thereby dissolved.[1]

---

1. The contents of this Memorandum And Order was issued as a Bench Ruling on August 21, 1981. In addition to a transcript, the Court has chosen to have the Bench Ruling prepared and filed as a written opinion. The result is the foregoing typewritten draft which is in full conformity with the handwritten draft with which the Court ruled from the Bench. The Order

entered on August 21, 1981, following the Bench Ruling, reads as follows:

AND NOW, this 21st day of August, 1981, at 3:50 P.M., it is ORDERED that the plaintiff's application for injunctive relief is DENIED.

/s/ John B. Hannum

