**Douglas E. KURTZ and Larry E. Ross, Plaintiffs,**

v.

**Richard E. DENNISTON and John Doe, Defendants.**

**No. C 92–0212.**

United States District Court, N.D. Iowa, Cedar Rapids Division.

Dec. 19, 1994.

Plaintiffs pro se.

Layne M. Lindebak, Asst. Atty. Gen., State of Iowa, for defendants.

**MEMORANDUM OPINION AND ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

BENNETT, District Judge.

I. PROCEDURAL BACKGROUND .................................... 633

II. STANDARDS FOR SUMMARY JUDGMENT ........................ 634
 A. Undisputed Facts ........................................... 636
 B. Disputed Facts ............................................ 636

III. LEGAL ANALYSIS ............................................ 636
 A. Mootness Of Injunctive Relief ................................ 636
 B. Qualified Immunity ......................................... 636
 1. Plaintiffs' Assertion Of An Issue Of Fact ................. 637
 2. Denniston's Claim Of Qualified Immunity ................ 637

IV. CONCLUSION ................................................ 643

Plaintiff prison inmates brought this action under 42 U.S.C. § 1983 alleging violation of their rights to freedom of religion by denial of their requests for "non-pork" cards by defendant prison chaplain. Defendant has moved for summary judgment on the ground that his decision was in accord with prison policy and a prior ruling of the district court, and therefore he is entitled to qualified immunity. Defendant has also moved for summary judgment on plaintiffs' request for injunctive relief on the ground that department of corrections policy has been changed, and prisoners are no longer required to obtain a "non-pork" card to receive pork-free meals. The prison now provides a non-pork alternative for each meal. Plaintiffs resist the motion on the ground that there is a genuine issue of material fact as to whether or not the alternative non-pork meals currently provided are nutritionally adequate.

**I. PROCEDURAL BACKGROUND**

On April 13, 1992, plaintiffs, Douglas E. Kurtz and Larry E. Ross, who at the time were both prisoners at the Iowa Men's Reformatory (IMR) in Anamosa, Iowa, filed an application to file a complaint in this matter *in forma pauperis.* The court granted the application on November 20, 1992, but also dismissed plaintiffs' complaint as frivolous under 28 U.S.C. § 1915(d). Following appeal to the Eighth Circuit Court of Appeals, the matter was remanded to the district court on March 1, 1993, with instructions to allow this matter to proceed. The Eighth Circuit Court of Appeals held that plaintiffs were not required to plead membership in a religious

organization which required abstinence from pork in order to state a claim that their religious beliefs were sincerely held and that their rights under the First Amendment had been violated. The application to proceed *in forma pauperis* was therefore granted on March 4, 1993, and the court ordered service of process to issue and appointed counsel for plaintiffs.

Defendant Richard Denniston answered the complaint on August 12, 1993, and moved for summary judgment on the ground of qualified immunity on September 16, 1993. Plaintiffs resisted the motion on September 24, 1993, but moved to hold open the record until affidavits could be filed. The affidavits in question were filed on October 4, 15, and 28, 1993. Plaintiffs counsel was granted leave to withdraw in this matter, citing irreconcilable differences with his clients, on August 15, 1994, and plaintiffs were ordered to proceed *pro se.* On September 13, 1994, the court ordered that all matters, including a motion to compel and extensions of time to file trial statements, should be held in abeyance until the court ruled on defendant's motion for summary judgment.[1] On November 10, 1994, Ross filed a motion for voluntary dismissal that states his desire not to proceed with this matter, but also sets forth a number of "stipulations" to be agreed to by all parties. In a letter to counsel for defendant filed with the court, Kurtz also sought to settle this case. Both plaintiffs assert that the reason for their desire to abandon or settle this litigation is that the department of corrections has terminated the policy of requiring non-pork cards in order for prisoners to obtain a pork-free meal. The court concludes that Ross has not made a voluntary dismissal of his interest in the action, because he has demanded a stipulation to certain facts or conditions as part of his " 'voluntary' dismissal." The court will therefore address the motion for summary judgment as it pertains to both plaintiffs. This matter is now fully submitted, and the court enters its ruling on the motion for summary judgment.

## II. STANDARDS FOR SUMMARY JUDGMENT

The Eighth Circuit recognizes "that summary judgment is a drastic remedy and must be exercised with extreme care to prevent taking genuine issues of fact away from juries." *Wabun–Inini v. Sessions,* 900 F.2d 1234, 1238 (8th Cir.1990). On the other hand, the Federal Rules of Civil Procedure have authorized for nearly 60 years "motions for summary judgment upon proper showings of the lack of a genuine, triable issue of material fact." *Celotex Corp. v. Catrett,* 477 U.S. 317, 327, 106 S.Ct. 2548, 2554, 91 L.Ed.2d 265 (1986). Thus, "summary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed 'to secure the just, speedy and inexpensive determination of every action.' " *Wabun–Inini,* 900 F.2d at 1238 (quoting *Celotex Corp. v. Catrett,* 477 U.S. 317, 327, 106 S.Ct. 2548, 2554, 91 L.Ed.2d 265 (1986)); *Hartnagel v. Norman,* 953 F.2d 394, 396 (8th Cir.1992).

The standard for granting summary judgment is well established. *Rule* 56 of the Federal Rules of Civil Procedure states in pertinent part:

Rule 56. Summary Judgment

(b) For Defending Party. A party against whom a claim ... is asserted ... may, at any time, move for summary judgment in the party's favor as to all or any part thereof.

(c) Motions and Proceedings Thereon.... *The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.*

*Fed.R.Civ.P.* 56(b) & (c) (emphasis added); *see also Celotex Corp. v. Catrett,* 477 U.S. 317, 322–23, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986); *Munz v. Michael,* 28 F.3d 795, 798 (8th Cir.1994); *Roth v. U.S.S. Great*

---

1. I was appointed as a district judge for the U.S. District Court for the Northern District of Iowa on August 26, 1994, and this case was transferred to me some time thereafter.

*Lakes Fleet, Inc.*, 25 F.3d 707, 708 (8th Cir. 1994); *Cole v. Bone*, 993 F.2d 1328, 1331 (8th Cir.1993); *Woodsmith Publishing Co. v. Meredith Corp.*, 904 F.2d 1244, 1247 (8th Cir.1990); *Wabun–Inini*, 900 F.2d at 1238 (citing *Fed.R.Civ.P.* 56(c)).[2] A court considering a motion for summary judgment must view all the facts in the light most favorable to the nonmoving parties, here Kurtz and Ross, and give them the benefit of all reasonable inferences that can be drawn from the facts. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986) (quoting *United States v. Diebold, Inc.*, 369 U.S. 654, 655, 82 S.Ct. 993, 994, 8 L.Ed.2d 176 (1962)); *Munz v. Michael*, 28 F.3d 795, 796 (8th Cir. 1994); *Allison v. Flexway Trucking, Inc.*, 28 F.3d 64, 66 (8th Cir.1994); *Johnson v. Group Health Plan, Inc.*, 994 F.2d 543, 545 (8th Cir.1993); *Burk v. Beene*, 948 F.2d 489, 492 (8th Cir.1991); *Coday v. City of Springfield*, 939 F.2d 666, 667 (8th Cir.1991), *cert. denied*, 502 U.S. 1094, 112 S.Ct. 1170, 117 L.Ed.2d 416 (1992).

Procedurally, the moving party, here Denniston, bears "the initial responsibility of informing the district court of the basis for their motion and identifying those portions of the record which show lack of a genuine issue." *Hartnagel*, 953 F.2d at 395 (citing *Celotex*, 477 U.S. at 323, 106 S.Ct. at 2552); *see also Reed v. Woodruff County, Ark.*, 7 F.3d 808, 810 (8th Cir.1993). Denniston is not required by *Rule* 56 to support his motion with affidavits or other similar materials negating the opponent's claim. *Id.*

■ "When a moving party has carried its burden under *Rule* 56(c), its opponent must do more than simply show there is some metaphysical doubt as to the material facts." *Matsushita*, 475 U.S. at 586, 106 S.Ct. at 1355. Kurtz and Ross are required under Rule 56(e) to go beyond the pleadings, and by affidavits, or by the "depositions, answers to interrogatories, and admissions on file," designate "specific facts showing that there

is a genuine issue for trial." *Fed.R.Civ.P.* 56(e); *Celotex*, 477 U.S. at 324, 106 S.Ct. at 2553. Although "direct proof is not required to create a jury question, ... to avoid summary judgment, 'the facts and circumstances relied upon must attain the dignity of substantial evidence and must not be such as merely to create a suspicion.'" *Metge v. Baehler*, 762 F.2d 621, 625 (8th Cir.1985) (quoting *Impro Products, Inc. v. Herrick*, 715 F.2d 1267, 1272 (8th Cir.1983), *cert. denied*, 465 U.S. 1026, 104 S.Ct. 1282, 79 L.Ed.2d 686 (1984)), *cert. denied*, 474 U.S. 1057, 106 S.Ct. 798, 88 L.Ed.2d 774 (1986). The necessary proof that the nonmoving party must produce is not precisely measurable, but the evidence must be "such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986); *Allison v. Flexway Trucking, Inc.*, 28 F.3d 64, 66 (8th Cir. 1994).

■ In *Anderson*, 477 U.S. at 249, 106 S.Ct. at 2510, *Celotex*, 477 U.S. at 323–24, 106 S.Ct. at 2552–53, and *Matsushita*, 475 U.S. at 586–87, 106 S.Ct. at 1355–56, the Supreme Court established that a summary judgment motion should be interpreted by the trial court to accomplish its purpose of disposing of factually unsupported claims, and the trial judge's function is not to weigh the evidence and determine the truth of the matter, but to determine whether there is a genuine issue for trial. *Johnson v. Enron Corp.*, 906 F.2d 1234, 1237 (8th Cir.1990). The trial court, therefore, must "assess the adequacy of the nonmovants' response and whether that showing, on admissible evidence, would be sufficient to carry the burden of proof at trial." *Hartnagel*, 953 F.2d at 396 (citing *Celotex*, 477 U.S. at 322, 106 S.Ct. at 2552). If Kurtz and Ross fail to make a sufficient showing of an essential element of a claim with respect to which they have the burden of proof, then Denniston is "entitled to judgment as a matter of law." *Celotex*, 477 U.S.

---

**2.** An issue of material fact is genuine if it has a real basis in the record. *Hartnagel v. Norman*, 953 F.2d 394 (8th Cir.1992) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87, 106 S.Ct. 1348, 1355–56, 89 L.Ed.2d 538 (1986)). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986); *Hartnagel*, 953 F.2d at 394.

at 323, 106 S.Ct. at 2552; *Woodsmith*, 904 F.2d at 1247. However, if the court can conclude that a reasonable trier of fact could return a verdict for the nonmovant, then summary judgment should not be granted. *Anderson*, 477 U.S. at 248, 106 S.Ct. at 2510; *Burk*, 948 F.2d at 492; *Woodsmith*, 904 F.2d at 1247. With these standards in mind, the court turns to consideration of the Denniston's motion for summary judgment.

### A. Undisputed Facts

The record reveals that the following facts are undisputed. In January of 1992, Kurtz and Ross approached IMR chaplain Richard E. Denniston seeking "non-pork" cards in order to obtain pork-free meals. Kurtz and Ross believe that the Bible compels them to forego pork in their diets. However, Denniston denied the request because it was his understanding of institutional policy that a person requesting a non-pork card had to be a member of a specific religious group that had as a tenet of its religion the requirement that adherents not eat pork.

At some time subsequent to the events of which plaintiffs complain, the entire Iowa Department of Corrections did away with the requirement that prisoners obtain a "non-pork" card to obtain pork-free meals. The IMR eliminated the requirement in the Spring of 1993. The IMR established a "master cycle menu," which provides inmates with a meatless entree alternative at every meal, thus allowing prisoners with religious dietary restrictions to obtain meatless meals without institutional approval.

### B. Disputed Facts

Plaintiffs assert that there is a genuine issue of material fact as to whether or not the meatless alternatives available to prisoners of the IMR who observe dietary restrictions are nutritionally adequate. They also assert that when Chaplain Denniston denied their request for "non-pork" cards, he did not or could not identify any written policy of the IMR mandating his decision.

## III. LEGAL ANALYSIS

### A. Mootness Of Injunctive Relief

■ Denniston argues that because the IMR, as well as the entire Department of Corrections, has abandoned the policy that required inmates to have a non-pork card to get alternative meals for religious reasons, any claim for injunctive relief is moot. Denniston argues that there is no realistic probability that the "non-pork" card policy will ever be reinstituted. Kurtz and Ross do not appear to address this mootness argument directly. Rather, they argue that there has been no showing that the meatless alternative meals are nutritionally adequate, and therefore it would seem that they are arguing they still have viable grounds for injunctive relief to obtain pork-free meals.

■ The Eighth Circuit Court of Appeals recently stated the standards for issuance of an injunction in a § 1983 action:

> An injunction must be tailored to remedy the specific harm shown.... Furthermore, title 42 U.S.C. § 1983, the title under which this action was brought, requires *inter alia* that, in order for liability to ensue, a person must be subjected to a deprivation of ... rights ... secured by the constitution and laws ...

*Falls v. Nesbitt*, 966 F.2d 375, 380 (8th Cir. 1992) (quoting *Rogers v. Scurr*, 676 F.2d 1211, 1214 (8th Cir.1982)). Where there is no constitutional violation, there is no necessity for injunctive relief. *Id.* Furthermore, a prisoner's claim for injunctive relief is moot if the prisoner is no longer subject to the conditions of which he complained. *Martin v. Sargent*, 780 F.2d 1334, 1337 (8th Cir. 1985).

In the present case, it is undisputed that prisoners at the IMR are no longer subject to the policy that required membership in a specific religious group before an inmate could receive a "non-pork" card. Therefore, Kurtz's and Ross's claims for injunctive relief are moot. Summary judgment in favor of Denniston is therefore appropriate on the claim for injunctive relief.

### B. Qualified Immunity

Denniston has moved for summary judgment on the ground that he has qualified immunity. Denniston asserts that this quali-

fied immunity arises because his actions as an employee of the IMR did not violate clearly established law. Specifically, he argues that the United States District Court for the Southern District of Iowa held in the consolidated cases of *Patchette v. Nix,* No. 88–1575–A (S.D.Ia. filed May 22, 1990), and *Patchette v. Grossheim,* No. 89–452–A (S.D.Ia. filed May 22, 1990), that the policy of the IMR and Iowa State Penitentiary requiring prisoners seeking a non-pork card to hold a "bona fide belief such as Muslim, etc.," was not unconstitutional. Denniston asserts that in early 1992, he was entitled to rely on the *Patchette* decisions, and therefore Kurtz's and Ross's right to "non-pork" cards despite that policy was not clearly established.

Kurtz and Ross argue only that there is a genuine issue of material fact as to whether or not the meatless meals provided by the IMR are nutritionally adequate, which they assert precludes summary judgment. They do not challenge directly Denniston's assertion of qualified immunity, except to state that merely citing the *Patchette* decisions without demonstrating that the menus at issue in that case and this are similar does not establish the constitutional adequacy of the IMR policy. Kurtz and Ross argue to some extent, with substantial authority, that prisoners must be given nutritionally adequate meals, even if the meals are to comply with special diet requests or restrictions.

### 1. Plaintiffs' Assertion Of An Issue Of Fact

■ The court concludes, first, that Kurtz's and Ross's resistance to the motion for summary judgment on the ground of qualified immunity entirely misses the point. "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986); *Hartnagel,* 953 F.2d at 394. Kurtz's and Ross's attempt to generate an issue of fact over the nutritional adequacy of the alternative meals does not affect the outcome of a suit that does not challenge the nutritional adequacy of the alternative meals in the first place. Kurtz and

Ross filed suit alleging violation of their constitutional rights to exercise their religion on the ground that they were denied "non-pork" cards, not on the ground that they were denied nutritionally adequate alternative meals. The only question before the court is whether or not Denniston is entitled to qualified immunity for his denial of "non-pork" cards to these plaintiffs. Kurtz and Ross have failed to generate a genuine issue of material fact on that issue. The court will therefore consider whether Denniston is entitled to qualified immunity as a matter of law.

### 2. Denniston's Claim Of Qualified Immunity

The standard for qualified immunity is that "government officials performing discretionary functions, generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982); *Bills v. Dahm,* 32 F.3d 333, 334 (8th Cir.1994); *Givens v. Jones,* 900 F.2d 1229, 1231–32 (8th Cir.1990) (quoting *Harlow* ). "[T]o be clearly established, [t]he contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Bills,* 32 F.3d at 335; *Johnson–El v. Schoemehl,* 878 F.2d 1043, 1048 (8th Cir.1989); *See also Anderson v. Creighton,* 483 U.S. 635, 640–41, 107 S.Ct. 3034, 3039, 97 L.Ed.2d 523 (1987). The shield of qualified immunity is breached if "the unlawfulness of the action [is] apparent in light of pre-existing law." *Bills,* 32 F.3d at 334–35. However, the Supreme Court has made clear that a plaintiff cannot defeat an official's claim of qualified immunity " 'simply by alleging violation of extremely abstract rights.' " *Bills,* 32 F.3d at 335 (quoting *Anderson,* 483 U.S. at 639, 107 S.Ct. at 3038); *Givens,* 900 F.2d at 1232 (quoting *Anderson,* 483 U.S. at 639, 107 S.Ct. at 3038).

■ Ordinarily, the court must make a three-part inquiry to determine whether the defendant is entitled to qualified immunity: First, it must determine whether the prisoner has asserted a violation of a constitutional

right; second, whether the allegedly violated constitutional right was clearly established; and third, if, given the facts of the case, a reasonable official would have known that the alleged actions violated the right. *Foulks v. Cole County, Mo.,* 991 F.2d 454 (8th Cir. 1993); *Cross v. City of Des Moines,* 965 F.2d 629, 631–32 (8th Cir.1992). *See also Loggins v. Delo,* 999 F.2d 364, 366 (8th Cir.1993) (first step in qualified immunity analysis was determination of whether conduct violated any clearly established right). The conduct of a reasonable official is measured by what " '[a] reasonably competent official should know.' " *Walters v. Grossheim,* 990 F.2d 381, 384 (8th Cir.1993) (quoting *Slone v. Herman,* 983 F.2d 107, 111 (8th Cir.1993), and denying qualified immunity because a reasonably competent official should know that unless a judgment has been stayed it must be obeyed). Good faith is not an element of the defense, nor relevant to the qualified immunity inquiry, because "the standard is one of 'objective reasonableness.' " *Slone,* 983 F.2d at 110 (quoting *Burk v. Beene,* 948 F.2d 489, 494 (8th Cir.1991), in turn quoting *Malley v. Briggs,* 475 U.S. 335, 344, 106 S.Ct. 1092, 1097, 89 L.Ed.2d 271 (1986)).

■ The Seventh Circuit Court of Appeals has held further that the test of qualified immunity

is not whether the conduct is clearly constitutional, but whether it is clearly unconstitutional. [Plaintiff's] proposed test would focus on whether courts have specifically sanctioned particular conduct, whereas the correct inquiry is whether courts have found the conduct unconstitutional or have defined a constitutional right in such a way that " 'a reasonable official would understand that what he is doing violates that right.' " *McDonald v. Haskins,* 966 F.2d 292, 293 (7th Cir.1992) (quoting *Anderson,* 483 U.S. at 640, 107 S.Ct. at 3039). "This is not to say that an official action is protected by qualified immunity unless the very action in question has previously been held unlawful, but it is to say that in the light of pre-existing law, the unlawfulness must be apparent." *Anderson,* 483 U.S. at 640, 107 S.Ct. at 3039 (citations omitted).... Application

of this test "does not require a prior case that is 'precisely on all fours on the facts and law.' " *McDonald,* 966 F.2d at 293.... Rather, we are concerned with whether the law was clear "in relation to the specific facts confronting the public official[s] when [they] acted." *Rakovich v. Wade,* 850 F.2d 1180, 1209 (7th Cir.), *cert. denied,* 488 U.S. 968, 109 S.Ct. 497, 102 L.Ed.2d 534 (1988); *see also McDonald,* 966 F.2d at 294.

*Knox v. McGinnis,* 998 F.2d 1405, 1409–10 (7th Cir.1993) (some internal citations omitted). Thus, qualified immunity protects "all but the plainly incompetent or those who knowingly violate the law." *Anderson,* 483 U.S. at 638, 107 S.Ct. at 3038. The immunity defense should fail if the official violates a clearly established right, because "a reasonably competent public official should know the law governing his conduct." *Slone,* 983 F.2d at 109 (quoting *Harlow,* 457 U.S. at 819, 102 S.Ct. at 2738). Therefore, qualified immunity extends to "a prison official who relies on a facially valid regulation unless he knows or should know that the regulation violates a well established constitutional right consisting of the particular act" he punishes or prohibits. *Wolfel v. Morris,* 972 F.2d 712, 719–20 (6th Cir.1992); *Cf. Cross,* 965 F.2d at 632 (official's conduct is protected if reasonable in light of the law and information official possessed at the time.)

■ The test for qualified immunity at the summary judgment stage of a proceeding is an objective one: The plaintiff must demonstrate that the law is clearly established and the defendant then bears the burden of showing that his conduct either does not violate plaintiff's rights or that there were extraordinary circumstances and that the defendant neither knew nor should have known of the relevant legal standard. *Johnson–El,* 878 F.2d at 1048. If the plaintiff can show that the defendant's conduct violated clearly established law, "then the defendant, as the movant for summary judgment, must demonstrate that no material issues of fact remain as to whether the defendant's actions were objectively reasonable in light of the law and the information the defendant possessed at the time of his actions." *Cross,* 965 F.2d at

632 (quoting *Salmon v. Schwarz*, 948 F.2d 1131, 1136 (10th Cir.1991)); *Johnson–El*, 878 F.2d at 1048 ("The defendant bears the burden of proof with respect to all other elements of the defense. . . .")

 In the present case, the court does not believe that there is any doubt that plaintiffs have alleged a violation of their constitutional rights, and that the contours of a prisoner's right to freedom of religion are clearly established.[3] The sole question here, the court believes, is whether Denniston knew or should have known that his conduct violated the law.[4]

The court finds that there is a split of authority concerning whether or not denial of religious dietary requests by a prisoner based on the fact that the prisoner's religious affiliation is outside of a group of "recognized" or "majority" religions or has few adherents in the prison violates the rights of the prisoner to free exercise of religion. A group of cases would appear to support Denniston's position that it would be reasonable for an official in his position to believe that denial of special dietary requests in the circumstances alleged here would not violate a prisoner's rights. The United States Supreme Court in *Cruz v. Beto*, 405 U.S. 319, 92 S.Ct. 1079, 31 L.Ed.2d 263 (1972), stated that while denial of a Buddhist prisoner's reasonable opportunity to pursue his faith could constitute violation of free exercise rights, "[w]e do not suggest, of course, that every

**3.** Incarceration in prison does not form a barrier separating prison inmates from the protections of the constitution. *Turner [v. Safley*, 482 U.S. 78,] at 84, 107 S.Ct. [2254,] at 2259[, 96 L.Ed.2d 64] [(1987)]. Among those rights that they possess, prisoners retain the right to the free exercise of religion. *O'Lone v. Estate of Shabazz*, 482 U.S. 342, 348[, 107 S.Ct. 2400, 2404, 96 L.Ed.2d 282] (1987).

*Salaam v. Lockhart*, 905 F.2d 1168, 1170 (8th Cir.1990). However, lawful limitations on the exercise of religious rights by prisoners may arise from the fact of incarceration and from valid penological objectives—including deterrence of crime, rehabilitation of prisoners, and institutional security. *O'Lone v. Estate of Shabazz*, 482 U.S. 342, 348, 107 S.Ct. 2400, 2404, 96 L.Ed.2d 282 (1987) (citing *Pell v. Procunier*, 417 U.S. 817, 822–23, 94 S.Ct. 2800, 2804, 41 L.Ed.2d 495 (1974) and *Procunier v. Martinez*, 416 U.S. 396, 412, 94 S.Ct. 1800, 1810, 40 L.Ed.2d 224 (1974)).

Prison regulations that infringe on the constitutional rights of prisoners to free exercise of religion are judged by their reasonableness and prison officials are not required to choose the least restrictive means possible in furthering administrative interests. *Salaam v. Lockhart*, 905 F.2d 1168, 1171 (8th Cir.1990); *see also Garza v. Carlson*, 877 F.2d 14, 16 (8th Cir.1989) (affirming district court's interpretation of *O'Lone*, *supra*, as stating that no constitutional violation is committed where prison officials have shown a legitimate penological basis for limiting an inmate's access to communal worship); *Butler–Bey v. Frey*, 811 F.2d 449, 451 (8th Cir.1987) (prison officials need only show that the religious practice "could create a potential threat to a legitimate penological interest" and that their response was not exaggerated); *Murphy v. Missouri Dept. of Corrections*, 814 F.2d 1252, 1256 (8th Cir.1987) (need for a particular prison regulation limiting free exercise of religion is to be balanced against the invasion of religious freedom the restriction entails). The court must consider four factors to determine if regulation of exercise of religion is reasonable: (1) whether it rationally and actually advances a neutral and legitimate governmental interest; (2) whether the prisoner has alternative means of exercising the same right; (3) the effect proposed accommodations will have on prison resources; and (4) whether the existence of "obvious, easy alternatives" that impose a *de minimis* cost reflect the regulation's lack of reasonableness. *Salaam v. Lockhart*, 905 F.2d 1168, 1171 (8th Cir.1990) (citing the test stated in *Turner v. Safley*, 482 U.S. 78, 89–91, 107 S.Ct. 2254, 2261–62, 96 L.Ed.2d 64 (1987)).

**4.** The court places very little weight on Denniston's assertion that the *Patchette* decision upholding the IMR policy entitles him to qualified immunity for following that policy. Denniston has never asserted that he actually relied on that decision in denying Kurtz and Ross "non-pork" cards. The fact that the court's decision preceded the events giving rise to this lawsuit does not alone establish that Denniston relied upon it.

The correctness of the *Patchette* decision should also be examined in light of the discussion following. In *Patchette*, the court concluded that IMR officials had stated a reasonable basis for the policy that restricted special religious diets to adherents of recognized religious groups. *Patchette*, slip op. at 30. The reasons for the policy stated by IMR officials were, first, that to allow all prisoners to have their own preferences at mealtime would place an undue burden upon mass feeding in a cafeteria arrangement, and, second, that inmates should not be allowed to circumvent established procedure since to do so would leave the decision to the inmates, and that would not be appropriate. *Id.* at 13. The IMR officials also feared proliferation of requests for special diets placing an undue burden on the food preparation system. *Id.* at 14.

religious sect or group within a prison—however few in number—must have identical facilities or personnel." *Cruz v. Beto,* 405 U.S. 319, 322 n. 2, 92 S.Ct. 1079, 1081 n. 2, 31 L.Ed.2d 263 (1972). In a prisoner's religious diet case, the Seventh Circuit Court of Appeals asserted that a more recent Supreme Court decision, *Employment Div., Dep't of Human Resources of Oregon v. Smith,* 494 U.S. 872, 110 S.Ct. 1595, 108 L.Ed.2d 876 (1990), "cut back, possibly to minute dimensions, the doctrine that requires government to accommodate, at some cost, minority religious preferences: the doctrine on which all the prison religion cases are founded." *Hunafa v. Murphy,* 907 F.2d 46, 48 (7th Cir. 1990). The Seventh Circuit court suggested that *Smith* might give the defendants in the case before it, who had denied an Islamic inmate's requests for specific food service practices to meet his desires for a non-pork religious diet, "a good defense" entitling them to summary judgment on a fuller record. *Id.*

The Fifth Circuit Court of Appeals has held that prisons need not respond to the particularized religious dietary requests of prisoners. *Kahey v. Jones,* 836 F.2d 948, 949 (5th Cir.1988); *Udey v. Kastner,* 805 F.2d 1218, 1220 (5th Cir.1986). The basis for these decisions was the court's recognition that if one such dietary request is granted, similar demands will proliferate. *Kahey,* 836 F.2d at 949; *Udey,* 805 F.2d at 1220. The court recognized two possible results of accommodating particularized dietary requests: "either accommodation of such demands will place an undue burden on the prison system, or the prisons would become entangled with religion while drawing fine and searching distinctions among various free exercise claimants." *Kahey,* 836 F.2d at 949 (conclud-

ing that *Udey* controlled its decision).[5] The Eleventh Circuit Court of Appeals also upheld a prison regulation denying dietary requests, even when such requests were sincerely held, on the basis that such regulations were rationally related to the goal of avoiding excessive administrative expenses. *Martinelli v. Dugger,* 817 F.2d 1499, 1506–08 (11th Cir.1987) (upholding regulation that denied only a Greek Orthodox prisoner a kosher diet).[6] *See also Jacques v. Hilton,* 569 F.Supp. 730, 731 (D.N.J.1983) ("It is obvious that every time two or more prisoners join in proclaiming a new religion, they cannot and should not be permitted to hold special meetings, to solicit funds and to partake in unique or expensive diets.")

In *Africa v. Pennsylvania,* 520 F.Supp. 967 (E.D.Penn.1981), the district court held that a prison is under no affirmative duty to provide a prisoner with his purportedly religious dietary requests. In that case, the prisoner asserted membership in an unrecognized religious group which purportedly had a dietary regimen requiring meals of raw and unprocessed foods. *Id.* at 969. On appeal, the Third Circuit Court of Appeals did not reach that issue, because it held that the prisoner's professed religion, MOVE, was not religious in nature. *Africa v. Pennsylvania,* 662 F.2d 1025, 1029 n. 5 (3d Cir.1981), *cert. denied,* 456 U.S. 908, 102 S.Ct. 1756, 72 L.Ed.2d 165 (1982).

Against the conclusion that a prisoner has no clearly established right to a religious diet, and consequently the conclusion that Denniston could not have known that his conduct violated the law, must be set another line of cases. Several cases stand for the proposition that inmates are entitled to "food sufficient to sustain them in good health that satisfies the dietary laws of their religion."

---

**5.** In another case where a prison regulation required an inmate to obtain a statement from a recognized spokesman or authority of the professed religion stating that the requested dietary practice was "deeply rooted in the religious beliefs" of the religion, the Ninth Circuit Court of Appeals concluded that the court had been presented with only a hypothetical question it could not properly address where the inmates were given temporary dietary permits and the regulation had never been enforced. *McCabe v. Arave,* 827 F.2d 634, 639 (9th Cir.1987).

**6.** The court in *Martinelli* first concluded that the fact that the prisoner insisted on dietary beliefs not held by the majority of adherents to that particular religion did not establish error in the trial court's conclusion that the dietary beliefs were sincerely held. *Martinelli,* 817 F.2d at 1505. *See also Thomas v. Review Bd., Ind. Employment Sec. Div.,* 450 U.S. 707, 715, 101 S.Ct. 1425, 1430, 67 L.Ed.2d 624 (1981) (observing that "the guarantee of free exercise is not limited to beliefs which are shared by all of the members of a religious sect.").

*McElyea v. Babbitt,* 833 F.2d 196, 198 (9th Cir.1987) *(per curiam )* (citing *Kahane v. Carlson,* 527 F.2d 492, 495 (2d Cir.1975)).[7] *See also Ward v. Walsh,* 1 F.3d 873, 877 (9th Cir.1993) (citing *McElyea); Hunafa v. Murphy,* 907 F.2d 46, 47 (7th Cir.1990) (also citing *McElyea); Moorish Science Temple v. Smith,* 693 F.2d 987, 990 (2d Cir.1982); *Barnett v. Rodgers,* 410 F.2d 995, 1002–03 (D.C.Cir.1969).

In *Ward v. Walsh,* the Ninth Circuit Court of Appeals conducted a full *Turner* analysis of an inmate's request for a completely kosher diet when only a non-pork diet was provided, comparing the inmate's interest with the prison's budgetary and administrative concerns. *Ward,* 1 F.3d at 877–79. Examining the first *Turner* factor, the court found that there was a logical connection between the prison's policy and its legitimate interest in running a simplified food service. *Id.* 1 F.3d at 877. However, the court found that the second *Turner* factor weighed in the inmate's favor. *Id.* 1 F.3d at 877–78. The court found first that private prayer did not provide an adequate alternative practice to dietary beliefs, especially where the prisoner's other means of practice were dramatically curtailed. *Id.* at 878. Still considering the second *Turner* factor, the court concluded that it must remand the case for determination of whether the dietary beliefs were "a positive expression of belief [or] a religious commandment which the believer may not violate at peril of his soul." *Id.* A regulation with the effect of inhibiting the latter concern, according to this court, had graver implications in the analysis of alternatives for practicing religion. *Id.*

As to the third *Turner* factor, accommodation, the court concluded that effects of perceptions of preferential treatment, present in every case of accommodation of religious practice, were not dispositive. *Id.* The court considered that more important were administrative difficulties, and again found that remand was necessary for findings of fact to weigh this factor. *Id.* 1 F.3d at 879.

In consideration of the fourth factor, alternatives to the prison's policy that could be accomplished at *de minimis* cost, the court also found insufficient evidence in the record to determine the costs of adhering fully or substantially with Jewish dietary law. *Id.*

Upon the foregoing analysis, the Ninth Circuit Court of Appeals concluded that

> [i]n the absence of sufficient factual findings regarding the second, third, and fourth factors, it is impossible for us to determine whether the denial of a kosher diet is reasonably related to the prison's legitimate interest in streamlined food service. In *McElyea* we established the principle that inmates have the right to be provided with food that satisfies the dietary laws of their religion. *McElyea,* 833 F.2d at 198. Abrogation of this important right cannot be justified by the rote recitation of the *O'Lone* standard. The failure to provide a kosher diet may require Ward to defile himself in a manner not contemplated by *O'Lone.* Moreover, unlike the claimants in *O'Lone,* Ward's religious practice in general has been significantly curtailed by the fact of incarceration in the remote prison. In such circumstances, it is necessary to evaluate carefully the justifications proffered by the prison before determining whether the Constitution allows the intrusion into the free exercise right of the inmate. We remand this claim so that the district court can make specific factual findings and can engage in a careful balancing of all the *Turner* factors.

*Id.*

The Second Circuit Court of Appeals engaged in no such lengthy analysis of the issue of prison accommodation of inmate's religious dietary requests. In a terse *per curiam* opinion, the court upheld the denial of summary judgment on the ground of qualified immunity for rejection of two requests by a prisoner for meals prepared in accordance with dietary laws of his religion. *Bass v.*

---

7. The court in *McElyea* held that there was a genuine issue of material fact on the sincerity of a Jewish inmate's beliefs concerning diet that precluded summary judgment on the inmate's claim of denial of free exercise of religion by refusal of the prison to provide his requested diet. *McElyea,* 833 F.2d at 198–99. In the present case, Denniston does not dispute the fact that Kurtz's and Ross's religious dietary beliefs are sincerely held.

*Coughlin,* 976 F.2d 98, 99 (2d Cir.1992). The court wrote:

> Defendants contend that though the state of the law requiring compliance with such requests had once been clear, it was be-clouded by subsequent Supreme Court decisions. We disagree. At least as early as 1975, it was established that prison officials must provide a prisoner a diet that is consistent with his religious scruples. *See Kahane v. Carlson,* 527 F.2d 492 (2d Cir. 1975). *Kahane* has never been overruled and remains the law. *See, e.g., Benjamin v. Coughlin,* 905 F.2d 571, 579 (2d Cir.), *cert. denied,* [498] U.S. [951], 111 S.Ct. 372, 112 L.Ed.2d 335 (1990). The principle it established was not placed in any reasonable doubt by intervening Supreme Court rulings in *O'Lone v. Estate of Shabazz,* 482 U.S. 342, 107 S.Ct. 2400, 96 L.Ed.2d 282 (1987), and *Turner v. Safley,* 482 U.S. 78, 107 S.Ct. 2254, 96 L.Ed.2d 64 (1987), that prison officials need meet less exacting standards when a prisoner's interest in marrying, or attending religious ceremonies, or maintaining the length of his hair is to be balanced against interests of rehabilitation and prison security.

> Accordingly, we affirm the denial of defendant's summary judgment motion substantially for the reasons stated in the district court's opinion published at 800 F.Supp. 1066 (N.D.N.Y.1991).

*Id.* Thus, in the Second Circuit, Denniston would presumably not be entitled to summary judgment on the ground of qualified immunity.

Other courts have also held that accommodation of religious dietary requests is constitutionally mandated and presents no substantial difficulty for prison management. For example, in *Barnett v. Rodgers,* 410 F.2d 995 (D.C.Cir.1969), the court wrote:

> Appellants do not seek, either for themselves or other Muslims, a full menu tailored specially to their religious beliefs. Their request for "one full-course pork-

free diet once a day and coffee three times daily" is essentially a plea for a modest degree of official deference to their religious obligations. Certainly if this concession is feasible from the standpoint of prison management, it represents the bare minimum that jail authorities, with or without specific request, are constitutionally required to do, not only for Muslims but indeed for any group of inmates with religious restrictions on diet. But we are not told why appellee could not equally accommodate, to some extent at least, appellants' supplication and the needs of any other such group as well.

*Barnett,* 410 F.2d at 1001. Similarly, in *Walsh v. Louisiana School Athletic Assoc.,* 428 F.Supp. 1261 (E.D.La.1977), the court commented that

> the state has little affirmative interest in what kind of food prisoners eat, and it is no great problem to prepare alternative diets. The rule presumably would be different if the prisoner's religion mandated him to eat the tongues of hummingbirds and drink the milk of paradise.

*Walsh,* 428 F.Supp. at 1267.[8] It should be noted that in the present case, Kurtz and Ross were not seeking a diet of "the tongues of hummingbirds" and "the milk of paradise," or any religious diet substantially different from the dietary requirements of other religious groups, but a straight-forward non-pork diet already available to qualifying members of the prison population.

Although the court agrees with those cases holding that prisons must make all reasonable accommodations to any sincerely held religious dietary belief of a prisoner, whether or not such prisoner belongs to a "recognized," "majority," or common religion within the particular prison's population, or an unusual, rare, or even new religion or sect, the court's belief in the proper rule is not the issue here. Instead, the issue is whether Denniston violated a clearly established right

---

**8.** *Walsh* is admittedly not a prisoner's free exercise of religion case; it is instead a case in which parents of children who attended Lutheran parochial elementary schools and who wished to attend the only Lutheran high school available to them, even though the school was not in their home district, challenged the constitutionality of the state high school athletic association's "transfer rule," which restricted the eligibility of a child enrolled in a school outside his or her home district to compete in interscholastic high school sports. *Walsh,* 428 F.Supp. at 1261.

to a religious diet and whether he should have known he was doing so. The court's identification and discussion of the split in authority concerning a prisoner's right to a special religious diet demonstrates that the right to such a diet was *not* clearly established. The Eighth Circuit Court of Appeals has not yet addressed this issue, so there was no controlling precedent upon which Denniston or this court could rely. The *Patchette* decision, whether or not known to Denniston, supports the position that Denniston's acts were "objectively reasonable in light of the law and the information the defendant possessed at the time of his actions." *Cross*, 965 F.2d at 632. The court concludes that Denniston is entitled to qualified immunity in these circumstances.[9]

■ In light of this court's ruling, however, it should now be clear, at least within this district, that a prisoner's right to a special religious diet *is* clearly established. Any future impingement upon that right will require a full *Turner* analysis before it can be upheld, and no official will be entitled to qualified immunity as to a claim based on violation of that right.

## IV. CONCLUSION

The court concludes that Denniston is entitled to summary judgment on Kurtz's and Ross's claim for injunctive relief. The claim for injunctive relief has been mooted by withdrawal of the policy of the IMR and the Iowa Department of Corrections alleged here to be violative of the prisoners' rights to free exercise of religion. Furthermore, the court concludes that plaintiffs failed to generate a genuine issue of material fact as to whether or not defendant was entitled to the defense of qualified immunity. The issue of fact which the plaintiffs attempted to generate, as to whether or not the alternate meatless meals now provided at the IMR are nutritionally adequate, is not relevant to the specific constitutional issue they raised in their complaint concerning the *availability* of meals in compliance with their religious di-

etary beliefs. Finally, the court concludes that defendant is entitled to summary judgment on the ground of qualified immunity. The court has identified a split in authority making it unclear whether prison officials violate a right to free exercise of religion or the law when they deny requests for a diet in compliance with an inmate's religious beliefs by an inmate not affiliated with a recognized religious group. Summary judgment is granted in favor of Denniston and against Kurtz and Ross on all claims, and this matter is dismissed. However, the court has now declared that, at least within this district, a prisoner's right to a special religious diet *is* clearly established. Any future impingement upon that right will require a full *Turner* analysis before it can be upheld, and no official will be entitled to qualified immunity as to a claim based on violation of that right.

**IT IS SO ORDERED.**

---

[9]. The court hopes that the decision of the IMR and the Iowa Department of Corrections to eliminate the policy in question here is a recognition of the importance of free exercise of religious

rights to inmates and the relative simplicity of substantially accommodating those rights as to dietary rules.