**Randall S. BILLS, Appellee,**

v.

**John J. DAHM, Warden; Harold W. Clarke, Director, Appellants.**

**No. 94–1300.**

United States Court of Appeals, Eighth Circuit.

Submitted June 16, 1994.

Decided Aug. 8, 1994.

Laurie Smith Camp, Lincoln, NE, argued (Don Stenberg and Laurie Smith Camp, on the brief), for appellants.

Todd E. Frazier, Omaha, NE, argued, for appellee.

Before MORRIS SHEPPARD ARNOLD, Circuit Judge, and HENLEY and JOHN R. GIBSON, Senior Judges.

MORRIS SHEPPARD ARNOLD, Circuit Judge.

Randall Bills brought this § 1983 action against officials of the Lincoln Correctional Center ("the LCC") and the Nebraska Department of Correctional Services for alleged violations of his Fourteenth Amendment right to equal protection because he was denied overnight visitation from his infant son during his term of incarceration while some female inmates of the Nebraska Center for Women were permitted such visits. The defendant corrections officials moved for summary judgment, and the district court denied the motion. This appeal followed.

### I.

The Appellants' contentions can be reduced to one argument on appeal, namely, whether they are entitled to qualified immunity in this action. A prison official is entitled to qualified immunity from suit unless the official's conduct violates a clearly-established statutory or constitutional right. *Anderson v. Creighton*, 483 U.S. 635, 640, 107 S.Ct. 3034, 3039, 97 L.Ed.2d 523 (1987). A right is "clearly established" when "the contours of the right [are] sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Id.* The regulation or policy in question need not have been previously litigated and stricken as unlawful before the shield of qualified immunity may be breached. Rather, the un-

lawfulness of the action simply needs to be apparent in light of pre-existing law. *Id.*

The right that Mr. Bills alleges was violated was his right to equal protection of the laws, as guaranteed by the Fourteenth Amendment. He claims that while he was incarcerated at the Lincoln Correctional Center that he was denied overnight visitation with his infant son, Lathan Bills, in a manner similar to that allowed inmates at the Nebraska Center for Women. The DCS conducts a program at the NCW called Mother/Offspring Life Development (MOLD), which permits overnight visitation with preteen children for women who qualify for the program. Inmates may qualify on the basis of disciplinary records and the completion of parenting classes conducted by the program. No similar program was available to inmates of the LCC. It is from the denial of access to this type of program that Mr. Bills asserts his § 1983 action for violation of his right to equal protection.

### A.

While the general principle of the right to equal protection has been clearly established, the Supreme Court has instructed us to make a more specific inquiry in qualified immunity cases. In *Anderson v. Creighton,* the Court upheld a district court's grant of summary judgment for a federal agent who had conducted a warrantless search of a home in pursuit of a bank robbery suspect. *Id.* at 637, 107 S.Ct. at 3037. In that case, the Court rejected the homeowners' contention that the Fourth Amendment protection against warrantless searches was clearly established. The Court reasoned that if the "clearly established" standard were applied at a level of generality removed from the specific facts of the case, "[p]laintiffs would be able to convert the rule of qualified immunity ... into a rule of virtually unqualified liability simply by alleging violation of extremely abstract rights." *Id.* at 639, 107 S.Ct. at 3038.

To determine whether Mr. Bills's constitutional right to equal protection was violated, therefore, we cannot begin with the generalized inquiry into whether the right to equal protection is clearly established. Instead, we must ask "a more particularized" question, *Id.* at 640, 107 S.Ct. at 3039, namely, whether under the circumstances of this case he had a clearly established right. In other words, we must determine whether he had a clearly established right to be offered the same opportunities afforded prisoners confined within the Nebraska Center for Women.

The Equal Protection Clause keeps governmental decisionmakers from treating disparately persons who are in all relevant respects similarly situated. *Nordlinger v. Hahn,* — U.S. ——, ——, 112 S.Ct. 2326, 2331, 120 L.Ed.2d 1 (1992). We need not decide the question, however, of whether Mr. Bills was, in fact, similarly situated to an inmate at the Nebraska Center for Women, or whether he was, in fact, subjected to a classification bearing no rational relationship to a legitimate penological interest. This is because if "an objectively reasonable" prison official could determine, in light of the clearly established principles governing equal protection, that Mr. Bills was not similarly situated to inmates of the NCW, and that the distinction was not arbitrary, then his right to equal treatment would not be "clearly established." *See, e.g., Anderson v. Creighton,* 483 U.S. at 639, 107 S.Ct. at 3039. Furthermore, since the rationality standard "applies to all circumstances in which the needs of prison administration implicate constitutional rights," *Washington v. Harper,* 494 U.S. 210, 224, 110 S.Ct. 1028, 1038, 108 L.Ed.2d 178 (1990), a reasonable prison official would not be burdened with the determination of what level of scrutiny courts would apply to the decision in this case.

### B.

A rational prison official would have been confronted with the following uncontroverted facts. Mr. Bills, at all times relevant to this action, was an inmate confined to the Lincoln Correctional Center. The Nebraska Department of Correctional Services classifies the LCC as a "level 2" security institution, having a double perimeter security fence and towers with armed correctional officers. All inmates within the Nebraska Center for Women, however, are within an institution

which the DCS classifies as a level 4 security institution, having only a single perimeter fence and no towers or armed correctional officers. Both prisons hold a significant number of maximum security offenders.

While the make-up of the inmate population at each of the prisons are not markedly dissimilar, it is objectively reasonable for a prison official to believe that the security concerns at the two prisons are distinguishable on the basis of the security level designations and the concomitant physical security structures in place. It is also, therefore, objectively reasonable for a prison official to believe that an inmate at the LCC is not similarly situated to an inmate at the NCW for purposes of overnight child visitation.

### C.

Although Mr. Bills may not be similarly situated to the inmates of the NCW, he is entitled to a determination of whether the regulation complained of is arbitrary. Where men and women are found not to be similarly situated, the court must still determine whether it would have been reasonable for a prison official to believe that the denial of overnight child visitation to Mr. Bills, in light of the program at the NCW, was rationally related to a permissible state objective. *See Parham v. Hughes,* 441 U.S. 347, 99 S.Ct. 1742, 60 L.Ed.2d 269 (1979). In *Parham,* the Court upheld a Georgia law that denied a biological father the right to recover in a wrongful death action for the death of an illegitimate child. The decision of the Court affirmed the Georgia Supreme Court's determination that, although the mother and father were not similarly situated, the statute had to at least have a rational relationship to a legitimate state interest. *Id.* at 350, 99 S.Ct. at 1745.

For purposes of qualified immunity analysis, however, we again need not show that the official action in the case before us is lawful. All we need determine is whether a reasonable prison official could have believed the denial of overnight child visitation to be lawful under the circumstances with which the defendants were confronted. For purposes of this § 1983 action for the denial of equal protection, therefore, we need only show that a reasonable prison official could have found the denial to have been rationally related to a legitimate penological interest.

Internal security is well recognized as a legitimate penological objective. *Timm v. Gunter,* 917 F.2d 1093, 1099 (8th Cir.1990). Overnight visitation by an infant could conceivably be viewed by prison officials as potentially jeopardizing internal security, since the child could be put at risk of being taken hostage or harmed by other inmates. These risks might also require reallocation of prison resources, thereby increasing the danger of a breakdown in security in areas from which resources are drawn. Since we can make a case for the relationship between the official action complained of and a legitimate purpose to be furthered by the action, we hold that a reasonable prison official could find this rational relationship as well.

Accordingly, since a reasonable prison official could believe that Mr. Bills was not similarly situated to an inmate granted overnight child visitation at the NCW, and since such an official could also find the denial of such privileges to Mr. Bills rationally related to a legitimate penological objective, it was not clearly established that Mr. Bills had a right to equal treatment in this case. The defendant prison officials, therefore, did not violate a clearly established right, and thus are entitled to qualified immunity in this action.

### II.

We find it necessary, however, to caution the defendants in this case against the use of demographic data to justify a regulation that potentially might effect the violation of a constitutional right. "The great object of our Constitution is to preserve individual rights...." *Satterlee v. Matthewson,* 27 U.S. (2 Pet.) 380, 407, 7 L.Ed. 458 (1829) (argument of Seargent, Esq., for the plaintiff in error). Prison inmates are not stripped completely of these rights as they enter through the prison gates. *Turner v. Safley,* 482 U.S. 78, 84, 107 S.Ct. 2254, 2259, 96 L.Ed.2d 64 (1987). Permissible discriminations against an individual must bear a rational relationship to his rele-

vant characteristics. "[T]he ideal of equal protection requires attention to individual merit, individual need." *Zobel v. Williams,* 457 U.S. 55, 70, 102 S.Ct. 2309, 2318, 72 L.Ed.2d 672 (1982) (Brennan, J., concurring). An individual, even a prisoner, may not be denied equal treatment afforded those sharing his relevant characteristics, simply because statistics show that he belongs to a group that typically does not bear those relevant characteristics. Such a justification would be similar to justifying the denial of library privileges to a woman on the basis of statistics that show more men have high school diplomas than women, or the denial of voting rights to an Asian–American on the basis of a statistic that shows that more European–Americans exercise the right to vote.

Stereotypes, regardless of how accurate they purport to be, cannot justify the abridgement of an individual's constitutional rights. They tell us nothing about the individual parties before us. If the overnight visitation program at the NCW was in fact the product of prison officials' attempts to structure a program on the basis of a stereotype, to the detriment of a similarly situated male inmate, then they may not fare very well under the rational basis scrutiny of *Turner.*

### IV.

For the foregoing reasons, we reverse the decision of the District Court and remand this cause for entry of summary judgment in favor of the defendants.