Raymond JAEGER, Plaintiff,

v.

DUBUQUE COUNTY, et al., Defendants.

No. C 94–1042.

United States District Court,
N.D. Iowa,
Eastern Division.

March 18, 1995.

Plaintiff Raymond Jaeger, pro se.

Les V. Reddick of Kane, Norby & Reddick, P.C., Dubuque, IA, and Richard K. Whitty of O'Connor & Thomas, P.C., Dubuque, IA, for defendants Dubuque County, Fred H. McCaw, Dennis Avenarius, Kenneth Runde, Don Vrotsos, and Paul Buss.

Michael H. Smith and Michael Paul Valde, Asst. Attys. Gen., IA, for defendants Joe Sanfilippo and Bradley E. Azeltine.

## ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTIONS TO STRIKE AFFIRMATIVE DEFENSES

### TABLE OF CONTENTS

I. PROCEDURAL BACKGROUND...........................................2

II. LEGAL ANALYSIS ...................................................3
 A. Improper Captions..............................................3
 B. Irrelevant And Impertinent Defenses.....................................4
 1. Qualified immunity ..........................................5
 2. "Good faith" as an element of qualified immunity .....................7
 3. The "objective reasonableness" test for qualified immunity ..............8
 4. Qualified immunity of DNR officers ..............................9
 5. State statutory immunity for municipalities ........................10
 a. The scope of the statutory immunity ...........................10
 b. State-law immunities to federal claims ..........................12
 c. The extent of municipal liability under § 1983 ....................15

III. CONCLUSION .....................................................18

BENNETT, District Judge.

In this lawsuit brought pursuant to 42 U.S.C. § 1983, arising from actions by Department of Natural Resources (DNR) and state law enforcement officials in searching and seizing property of the plaintiff, the plaintiff has filed motions to strike pleadings on two grounds. First, the plaintiff argues that defendants have improperly modified the caption in the case by capitalizing all of the letters of his name, thereby improperly changing his status or suggesting that he is a corporation rather than an individual. Second, the plaintiff argues that defendants have pleaded impertinent and irrelevant immunity defenses.

## I. PROCEDURAL BACKGROUND

Plaintiff Raymond Jaeger filed the original complaint in this matter on November 25, 1994. He filed an amended complaint on December 21, 1994. The amended complaint asserts that defendants, including Department of Natural Resources (DNR) and state law enforcement officials, violated his Fourth, Fifth, and Fourteenth Amendment rights by conducting an unreasonable search and seizure of his property without any warrant or exigent circumstances in violation of clearly established law. Jaeger seeks compensatory and consequential damages of $500,000.00 and punitive damages of $1,500,000.00, plus costs and attorney fees.

This matter comes before the court pursuant to Jaeger's January 24, 1995, motion to strike affirmative defenses of defendants Buss, McCaw, Dubuque County, Avenarius, Runde, and Vrotsos (collectively, the Dubuque County defendants) (docket number 35), which was resisted by the named defen-

dants on January 26, 1995. This matter also comes before the court pursuant to Jaeger's January 30, 1995, motion to strike affirmative defenses of defendants Sanfilippo and Azeltine (the DNR defendants) (docket number 37), which was resisted by the named defendants on February 6, 1995. The court concludes that both motions must be denied.

## II. LEGAL ANALYSIS

### A. Improper Captions

■ In both of his motions, Jaeger contends that defendants violated *Fed.R.Civ.P.* 10(a) by capitalizing all of the letters of his name in the caption of their answers to his complaint. Jaeger asserts that the alteration was not one of the modifications to the caption specifically permitted in *Fed.R.Civ.P.* 10(a).[1] Jaeger asserts that "All capital letters changes the status of an individual significantly, as it creates a corporate 'person' (which plaintiff is not) and changes the status of an individual (which plaintiff has not authorized). *See Black's Law Dictionary, 5th Ed. at 191.*" The court does not believe that the cited authority supports Jaeger's proposition, because the definitions found on the cited page of *Black's Law Dictionary* have to do with the financial basis of a corporation, not the way in which names are written.

■ The court finds Jaeger's arguments concerning capitalization otherwise specious. The court routinely capitalizes the names of all parties before this court in all matters, civil and criminal, without any regard to their corporate or individual status, and has never considered that *Fed.R.Civ.P.* 10(a) prevented different fonts, type faces, types of ink, types of printers, methods of printing or handwrit-

---

1. *Fed.R.Civ.P.* 10(a) provides, in pertinent part, that

 [e]very pleading shall contain a caption setting forth the name of the court, the title of the action, the file number, and a designation as in Rule 7(a). In the complaint the title of the action shall include the names of all the parties, but in other pleadings it is sufficient to state the name of the first party on each side with an appropriate indication of other parties.

N.D.Ia. LR 10, the local court rule pertaining to filings, establishes other specific matters for filings and pleadings, including size, margins, legibility, duplication, page numbering, identification of parties and the court, signatures, and copies, but does not specify the capitalization style for any part of the caption.

ing, or styles of capitalization for names of parties. The rule by its very terms identifies only changes in the *content* of captions, not the way in which they are printed. Jaeger's motions to strike are denied as to improper captioning.

### B. Irrelevant And Impertinent Defenses

Jaeger also asserts that defendants have violated *Fed.R.Civ.P.* 12(f) by pleading irrelevant or impertinent affirmative defenses.[2] Jaeger asserts that defendants' pleadings of immunity are inadequate because they do not state supporting criteria; because "good faith" immunity was abolished by *Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982); and because defendants' reference to immunity based on "Chapter 670, The Code" is vague and further that no "code" can create immunity.[3] Jaeger argues further that the Department of Natural Resources defendants, Joe Sanfilippo and Bradley Azeltine (the DNR defendants), cannot raise qualified immunity or any other immunity because they are not law enforcement officers.

#### 1. Qualified immunity

 The affirmative defenses of qualified immunity are plainly relevant in these proceedings, because each of the defendants is a government official or municipality and the actions complained of are actions taken in the course of the individual defendants' official duties. The standard for qualified immunity is that "government officials performing discretionary functions, generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982); *Bills v. Dahm,* 32 F.3d 333, 334 (8th Cir.1994); *Givens v. Jones,* 900 F.2d 1229, 1231–32 (8th Cir.1990) (quoting *Harlow* ). "[T]o be clearly established, [t]he contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Bills,* 32 F.3d at 335; *Johnson–El v. Schoemehl,* 878 F.2d 1043, 1048 (8th Cir.1989); *See also Anderson v. Creighton,* 483 U.S. 635, 640–41, 107 S.Ct. 3034, 3039, 97 L.Ed.2d 523 (1987). The shield of qualified immunity is breached if "the unlawfulness of the action [is] apparent in light of pre-existing law." *Bills,* 32 F.3d at 334–35. However, the Supreme Court has made clear that a plaintiff cannot defeat an official's claim of qualified immunity " 'simply by alleging violation of extremely abstract rights.' " *Bills,* 32 F.3d at 335 (quoting *Anderson,* 483 U.S. at 639, 107 S.Ct. at 3038); *Givens,* 900 F.2d at 1232 (quoting *Anderson,* 483 U.S. at 639, 107 S.Ct. at 3038).

 Ordinarily, the court must make a three-part inquiry to determine whether the

---

**2.** *Fed.R.Civ.P.* 12(f) provides that

> [u]pon motion made by a party before responding to a pleading or, if no responsive pleading is permitted by these rules, upon motion made by a party within 20 days after the service of the pleading upon the party or upon the court's own initiative at any time, the court may order stricken from any pleading any insufficient defense or any redundant, immaterial, impertinent, or scandalous matter.

Jaeger's objections to the filings in this matter were timely raised.

**3.** The affirmative defenses of which Jaeger complains are stated identically in the answer to the amended complaint of Dubuque County, McCaw, Avenarius, Runde, and Vrotsos, and in the separate answer of Paul Buss:

> **FIRST AFFIRMATIVE DEFENSE**
> Defendants acted with good faith belief as to probable cause and have a qualified immunity to Plaintiffs' Complaint.

> **SECOND AFFIRMATIVE DEFENSE**
> Defendants have immunity under Chapter 670, The Code, and Plaintiff's Complaint, therefore, fails to state a claim upon which relief can be granted.

> **THIRD AFFIRMATIVE DEFENSE**
> At all times material to the allegations alleged in the Complaint Defendants acted in good faith enforcement of laws and had reasonable grounds upon which to believe they were acting in good faith and therefore are immune from the claims made in Plaintiff's Complaint.

The Answer of the DNR defendants to the Amended Complaint states only one affirmative defense of which Jaeger has complaint in the present motions:

> **FIRST AFFIRMATIVE DEFENSE**
> These Defendants are entitled to have the Complaint dismissed pursuant to the doctrine of qualified immunity.

Thus, the DNR defendants have not suggested that "good faith" plays any part in their defense of qualified immunity.

defendant is entitled to qualified immunity: First, it must determine whether the prisoner has asserted a violation of a constitutional right; second, whether the allegedly violated constitutional right was clearly established; and third, if, given the facts of the case, a reasonable official would have known that the alleged actions violated the right. *Foulks v. Cole County, Mo.,* 991 F.2d 454 (8th Cir. 1993); *Cross v. City of Des Moines,* 965 F.2d 629, 631–32 (8th Cir.1992). *See also Loggins v. Delo,* 999 F.2d 364, 366 (8th Cir.1993) (first step in qualified immunity analysis was determination of whether conduct violated any clearly established right). The conduct of a reasonable official is measured by what " '[a] reasonably competent official should know.' " *Walters v. Grossheim,* 990 F.2d 381, 384 (8th Cir.1993) (quoting *Slone v. Herman,* 983 F.2d 107, 111 (8th Cir.1993), and denying qualified immunity because a reasonably competent official should know that unless a judgment has been stayed it must be obeyed).

### 2. *"Good faith" as an element of qualified immunity*

Although the Supreme Court in *Harlow* called the defense "[q]ualified or 'good faith' immunity," *Harlow,* 457 U.S. at 815, 102 S.Ct. at 2736, as have other courts since, *see, e.g., Reeve v. Oliver,* 41 F.3d 381, 382 n. 1 (8th Cir.1994) (*Harlow* referred to the defense as "qualified or 'good faith' immunity"), the court and the parties must not mistake nomenclature for a description of the current test for or elements of the defense. In *Harlow,* the Supreme Court made it clear that subjective "good faith" is no longer an element of the defense. *Harlow,* 457 U.S. at 816–18, 102 S.Ct. at 2737–38. The Court's deletion of the subjective element of good faith rested on the pragmatic judgment that it "frequently has proved incompatible with our admonition in *Butz [v. Economou,* 438 U.S. 478, 98 S.Ct. 2894, 57 L.Ed.2d 895 (1978),] that insubstantial claims should not proceed to trial." *Harlow,* 457 U.S. at 815–16, 102 S.Ct. at 2736–37.

The position of the Eighth Circuit Court of Appeals on this matter was made equally clear in *Slone,* in which the court rejected "attempts to instill a good faith element into the qualified immunity defense." *Slone,* 983 F.2d at 110. The court held that " '[a] defendant's good faith or bad faith is irrelevant to the qualified immunity inquiry [because] [t]he standard is one of "objective reasonableness." ' " *Slone,* 983 F.2d at 110 (quoting *Burk v. Beene,* 948 F.2d 489, 494 (8th Cir. 1991), in turn quoting *Malley v. Briggs,* 475 U.S. 335, 344, 106 S.Ct. 1092, 1097, 89 L.Ed.2d 271 (1986)). This court has adhered to *Slone*'s pronouncement as controlling precedent in a recent decision. *See Kurtz v. Denniston,* 872 F.Supp. 631, 638 (N.D.Iowa 1994) ("good faith" is not an element of the qualified immunity defense).

 Thus, to the extent that the defendants have pleaded an immunity defense based on the subjective "good faith" of their conduct, that defense should be stricken in light of *Slone.* However, to the extent that the defendants have pleaded defenses based on objective reasonableness of their conduct, however named, those defenses are certainly relevant here. The court finds that the defenses as pleaded by these defendants are amenable to either reading. Thus, the court construes the Dubuque County defendants' references to "good faith" immunity in their first and third affirmative defenses to be inartful pleadings of what is now properly called "qualified immunity." The court concludes that it cannot strike any affirmative defense here pleaded; however, the court assures the parties that it will measure those defenses in light of the proper objective reasonableness test without regard to any subjective good faith of the actors.

### 3. *The "objective reasonableness" test for qualified immunity*

 The test courts must apply to a defense of qualified immunity has been clarified by the Seventh Circuit Court of Appeals:

[the test of qualified immunity] is not whether the conduct is clearly constitutional, but whether it is clearly unconstitutional. [Plaintiff's] proposed test would focus on whether courts have specifically sanctioned particular conduct, whereas the correct inquiry is whether courts have found the conduct unconstitutional or have de-

fined a constitutional right in such a way that " 'a reasonable official would understand that what he is doing violates that right.' " *McDonald v. Haskins*, 966 F.2d 292, 293 (7th Cir.1992) (quoting *Anderson*, 483 U.S. at 640, 107 S.Ct. at 3039). "This is not to say that an official action is protected by qualified immunity unless the very action in question has previously been held unlawful, but it is to say that in the light of pre-existing law, the unlawfulness must be apparent." *Anderson*, 483 U.S. at 640, 107 S.Ct. at 3039 (citations omitted).... Application of this test "does not require a prior case that is 'precisely on all fours on the facts and law.' " *McDonald*, 966 F.2d at 293.... Rather, we are concerned with whether the law was clear "in relation to the specific facts confronting the public official[s] when [they] acted." *Rakovich v. Wade*, 850 F.2d 1180, 1209 (7th Cir.), *cert. denied*, 488 U.S. 968, 109 S.Ct. 497, 102 L.Ed.2d 534 (1988); *see also McDonald*, 966 F.2d at 294.

*Knox v. McGinnis*, 998 F.2d 1405, 1409–10 (7th Cir.1993) (some internal citations omitted). Thus, qualified immunity protects "all but the plainly incompetent or those who knowingly violate the law." *Anderson*, 483 U.S. at 638, 107 S.Ct. at 3038. The immunity defense should fail if the official violates a clearly established right, because "a reasonably competent public official should know the law governing his conduct." *Slone*, 983 F.2d at 109 (quoting *Harlow*, 457 U.S. at 819, 102 S.Ct. at 2738). Therefore, qualified immunity extends to "a prison official who relies on a facially valid regulation unless he knows or should know that the regulation violates a well established constitutional right consisting of the particular act" he punishes or prohibits. *Wolfel v. Morris*, 972 F.2d 712, 719–20 (6th Cir.1992); *Cf. Cross*, 965 F.2d at 632 (official's conduct is protected if reasonable in light of the law and information official possessed at the time.). Whether defendants can meet this standard remains to be

seen. However, the qualified immunity defenses defendants have raised are plainly relevant to these proceedings and shall not be stricken on that ground.

### 4. Qualified immunity of DNR officers

 Jaeger also asserts that the DNR defendants cannot raise qualified immunity as an affirmative defense, because they are not law enforcement officers. It is plain, however, that qualified immunity protection is not limited just to law enforcement officers. Rather, the doctrine shields "government officials performing discretionary functions." *Harlow*, 457 U.S. at 818, 102 S.Ct. at 2738. The DNR defendants are such officials. This court does not believe that any prior decision is required stating specifically that DNR officials are entitled to qualified immunity,[4] when government officials generally are entitled to raise the defense to shield them from civil liability for conduct in the performance of discretionary functions. *Harlow*, 457 U.S. at 818, 102 S.Ct. at 2738. "The DNR defendants are entitled to prove that their conduct did not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Id.*

### 5. State statutory immunity for municipalities

Finally, Jaeger asserts that the Dubuque County defendants cannot raise an immunity defense based on any "code" and further asserts that they have not properly identified the "code" to which they refer. It is apparent to the court that the "code" in question is the Code of the State of Iowa, and the provisions in question are found in Iowa Code Ch. 670 (1993). Had the Dubuque County defendants submitted the statutory immunity defense as pleaded here in an Iowa state court, this court doubts that any party would have been confused. Although the Dubuque County defendants could be criticized for not showing proper regard for the fact that their

---

4. In *Gunderson v. Schlueter*, 904 F.2d 407, 408–09 (8th Cir.1990), the Eighth Circuit Court of appeals affirmed summary judgment in favor of DNR officials which had been based in part on their qualified immunity defense, but the appellate court did not reach the applicability of that defense to DNR officials, affirming the decision of the district court on its disposition of the substantive claims of constitutional violations including procedural and substantive due process claims.

answer was filed in *federal* court, in which a number of codes might be applicable, nor proper regard for the local court rules on pleading applicable codes,[5] the Dubuque County defendants' assertion of a state statutory immunity to a § 1983 lawsuit suffers from other, more substantial, difficulties.

### a. The scope of the statutory immunity

■ First, on its face, Iowa Code Ch. 670 provides only for the liability, and then for the immunity from that liability, of *municipalities*, not individual governmental officials.[6] Thus, even if Iowa Code Ch. 670 provides an applicable immunity, that immunity would only shield the County of Dubuque, and not any of the other so-called Dubuque County defendants. To the extent the answers of the Dubuque County defendants attempt to assert an affirmative defense for individual defendants founded on Iowa Code Ch. 670, that affirmative defense is stricken.

### b. State-law immunities to federal claims

Next, the court must consider whether a state statutory immunity for a municipality is applicable to a *federal* lawsuit based on violation of *federal* rights. At the outset, the court notes that it has found no decision in either the federal courts or Iowa state courts in which the immunities in Iowa Code § 670.4 have been deemed to apply to a suit brought pursuant to 42 U.S.C. § 1983. Rather, even in suits involving both state-law claims and § 1983 claims against municipalities, Iowa state courts have applied the provisions of chapter 670 only to the state-law claims, deciding the § 1983 issues of liability and punitive damages solely on the basis of federal decisions. *See, e.g., Willson v. City of Des Moines*, 386 N.W.2d 76, 79–82 (Iowa 1986) (plaintiff could pursue § 1983 claim against municipality even though former Iowa Code Ch. 613A, now Iowa Code Ch. 670, purported to provide the exclusive remedy against a municipality for violations of civil rights); *Rhiner v. City of Clive*, 373 N.W.2d 466, 470–72 (Iowa 1985) (municipal liability on § 1983 claim decided by reference to federal law, not Iowa Code Ch. 613A, now Chapter 670, although court held that Iowa Code Ch. 613A, regarding the tort liability of governmental subdivisions, provided an ade-

---

5. The court does wish to call to the defendants' attention N.D.Ia. LR 10(f), which provides that "All citations in pleadings or other requests for court action shall refer to the United States Code or to the appropriate State Code."

6. Liability is imposed on state subdivisions in Iowa Code § 670.2:

> Except as otherwise provided in this chapter, every municipality is subject to liability for its torts and those of its officers and employees, acting within the scope of their employment or duties, whether arising out of a governmental or proprietary function.
>
> For the purposes of this chapter, employee includes a person who performs services for a municipality whether or not the person is compensated for the services, unless the services are performed only as an incident to the person's attendance at a municipal function.
>
> A person who performs services for a municipality or an agency or subdivision of a municipality and who does not receive compensation is not personally liable for a claim based upon an act or omission of the person performed in the discharge of the person's duties, except for acts or omissions which involve intentional misconduct or knowing violation of the law, or for a transaction from which the person derives an improper personal benefit. For purposes of this action, *"compensation"* does not include payments to reimburse a person for expenses.

Although this section of the Iowa Code appears to extend immunity to persons who perform services for a municipality for which they do not receive compensation, this exclusion from liability is inapplicable to any defendant here, as all are compensated employees of Dubuque County.

The liability imposed in Iowa Code § 670.2 is then subject to exemptions or immunities pursuant to Iowa Code § 670.4, which provides, *inter alia*, as follows:

> The liability imposed by section 670.2 shall have no application to any claim enumerated in this section. As to any such claim, a municipality shall be liable only to the extent liability may be imposed by the express statute dealing with such claims and, in the absence of such express statute, the municipality shall be immune from liability....
>
> 3. Any claim based upon an act or omission of an officer or employee of the municipality, exercising due care, in the execution of a statute, ordinance, or regulation whether the statute, ordinance, or regulation is valid, or based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of the municipality or an officer or employee of the municipality, whether or not the discretion was abused....
>
> 5. Any claim for punitive damages.

quate state remedy for the claims presented, thus *no federal due process claim arose*); *Cunha v. City of Algona,* 334 N.W.2d 591, 594–96 (Iowa 1983) (liability of municipality on § 1983 claim decided by reference to federal law, while provisions of former Iowa Code Ch. 613A, now Iowa Code Ch. 670 were applied to state-law claims); *Dickerson v. Young,* 332 N.W.2d 93, 105 (Iowa 1983) (in case in which punitive damages were awarded against municipality following verdict against municipality on § 1983 claim, and on state-law trespass and conversion claims, the immunity of the municipality from punitive damages on the § 1983 claim was decided on the basis of *Monell v. City of New York City Dep't of Social Serv.,* 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978), and *Newport v. Fact Concerts, Inc.,* 453 U.S. 247, 101 S.Ct. 2748, 69 L.Ed.2d 616 (1981), and the availability of punitive damages on the state law claims was to be decided by reference to then Iowa Code § 613A.4(5), now Iowa Code § 670.4(5)).

The court also finds that federal courts have rejected state-law immunities as providing any bar to § 1983 claims. In *Howlett v. Rose,* 496 U.S. 356, 110 S.Ct. 2430, 110 L.Ed.2d 332 (1990), the Supreme Court held that states cannot apply sovereign immunity rules to bar § 1983 claims against local governments in state courts. In *Howlett,* the Court held that

> [i]f the [Florida] District Court of Appeal meant to hold that governmental entities subject to § 1983 liability enjoy an immunity over and above those already provided in § 1983, that holding directly violates federal law. The elements of, and the defenses to, a federal cause of action are defined by federal law. *See Monessen Southwestern R. Co. v. Morgan,* 486 U.S. 330, 335 [, 108 S.Ct. 1837, 1842, 100 L.Ed.2d 349] (1988); *Chesapeake & Ohio R. Co. v. Kuhn,* 284 U.S. 44, 46–47 [, 52 S.Ct. 45, 45–46, 76 L.Ed. 157] (1931). A State may not, by statute or common law, create a cause of action under § 1983 against an entity whom Congress has not subjected to liability. *Moor v. County of Alameda,* 411 U.S. 693, 698–710 [, 93 S.Ct. 1785, 1789–1796, 36 L.Ed.2d 596] (1973). Since this Court has construed the word

"person" in § 1983 to exclude States, neither a federal court nor a state court may entertain a § 1983 action against such a defendant. Conversely, since the Court has held that municipal corporations and similar governmental entities are "persons," *see Monell v. New York City Dept. of Social Services,* 436 U.S. 658, 663 [, 98 S.Ct. 2018, 2021, 56 L.Ed.2d 611] (1978); *cf. Will [v. Michigan Department of State Police,* 491 U.S. [58,] 69, n. 9 [, 109 S.Ct. 2304, 2311, n. 9, 105 L.Ed.2d 45] [ (1989) ]; *Mt. Healthy City Bd. of Education v. Doyle,* 429 U.S. 274, 280–81 [, 97 S.Ct. 568, 572–73, 50 L.Ed.2d 471] (1977), a state court entertaining a § 1983 action must adhere to that interpretation. "Municipal defenses—including an assertion of sovereign immunity—to a federal right of action are, of course, controlled by federal law." *Owen v. City of Independence,* 445 U.S. [622,] 647, n. 30 [, 100 S.Ct. 1398, 1413, n. 30, 63 L.Ed.2d 673] [ (1980) ]. "By including municipalities within the class of 'persons' subject to liability for violations of the Federal Constitution and laws, Congress—the supreme sovereign on matters of federal law—abolished whatever vestige of the State's sovereign immunity the municipality possessed." *Id.,* at 647–648 [, 100 S.Ct. at 1413] (footnote omitted).

*Howlett,* 496 U.S. at 375–376, 110 S.Ct. at 2442. Thus, in *Howlett,* the Supreme Court rejected Florida's attempt to extend absolute immunity from suit not only to the state and its arms, but also to municipalities, counties, and school districts that might otherwise be subject to suit under § 1983 in federal court as an attempt to evade federal law. *Id.* at 365, 110 S.Ct. at 2436.

▋ The decisions of other courts follow *Howlett* and *Owen,* finding state-law immunities inapplicable to § 1983 claims. *See, e.g., Ambus v. Granite Bd. of Educ.,* 995 F.2d 992, 995 (10th Cir.1993) (" 'To the extent that the [Utah] law of sovereign immunity reflects a substantive disagreement with the extent to which governmental entities should be held liable for their constitutional violations, that disagreement cannot override the dictates of federal law,' " quoting *Howlett,* 496 U.S. at 377–78, 110 S.Ct. at 2443–44);

*Goldberg v. Town of Rocky Hill,* 973 F.2d 70, 74 (2d Cir.1992) ("Following *Owen,* many courts have held that municipalities are not immune from liability under § 1983 for actions taken in a legislative capacity."); *Brown v. United States,* 742 F.2d 1498, 1509 (D.C.Cir.1984) (In *Owen,* "the Court explicitly discussed the two principal common law theories of municipal immunity ... and rejected the proposition that either could limit suits under 42 U.S.C. § 1983."); *Brockell v. Norton,* 688 F.2d 588, 591 (8th Cir.1982) ("The Supreme Court in *Owen* dealt with the issue of a municipalities immunity from suit under 42 U.S.C. § 1983. In that context, the Court stated that federal law of sovereign immunity would control over any assertion of a state immunity defense."). It follows from *Howlett* that Iowa Code Ch. 670, which purportedly is only a limited waiver of sovereign immunity for municipalities, attempting to retain some vestiges of that immunity, is inapplicable to this action pursuant to federal law. The court concludes that, although the decisions above generally involved state *common*-law immunities, Iowa's *statutory* immunity can fare no better, because federal law, not state law whether statutory or common, is controlling as to federal claims brought pursuant to § 1983.

In *Owen,* the Supreme Court had recognized that at common law municipalities had generally had immunity, unless withdrawn by statute, for "governmental" (as opposed to "proprietary") and "discretionary" functions, but ruled that this history did not justify giving municipalities qualified immunity under § 1983. *Owen,* 445 U.S. at 647, 100 S.Ct. at 1413. It is immunity for just these "governmental" and "discretionary" functions that is waived in Iowa Code § 670.2. In *Owen,* the court wrote:

> [T]he municipality's governmental immunity is obviously abrogated by the sovereign's enactment of a statute making it amenable to suit. Section 1983 was just such a statute.

*Id.* This holding of *Owen* is particularly applicable to the situation here. Iowa Code § 670.4 states that

> [t]he liability imposed by section 670.2 shall have no application to any claim enu-

merated in this section. As to any such claim, a municipality shall be liable only to the extent liability may be imposed by the express statute dealing with such claims....

Even if § 670.4(4) or (5) provided immunity in this proceeding, a municipality would still be liable to the extent liability could be imposed by the express statute upon which the claims here are based, § 1983.

### c. The extent of municipal liability under § 1983

The extent of liability of municipalities for claims brought pursuant to § 1983 has occupied courts since the Supreme Court made clear municipalities were "persons" subject to § 1983 liability in *Monell v. New York City Dep't of Social Serv.,* 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). Analysis of a § 1983 claim against a municipality requires the court to separate two different issues: First, whether plaintiff's harm was caused by a constitutional violation, the issue on which the court concluded above that there is at least a genuine issue of material fact, and second, whether the city is responsible for that violation. *Collins v. City of Harker Heights, Texas,* 503 U.S. 115, 122, 112 S.Ct. 1061, 1066, 117 L.Ed.2d 261 (1992); *Oklahoma City v. Tuttle,* 471 U.S. 808, 817, 105 S.Ct. 2427, 2432, 85 L.Ed.2d 791 (1985); *see also Canton v. Harris,* 489 U.S. 378, 385, 109 S.Ct. 1197, 1202, 103 L.Ed.2d 412 (1989), ("Thus, our first inquiry in any case alleging municipal liability under § 1983 is the question of whether there is a direct causal link between a municipal policy or custom and the alleged constitutional deprivation," citing *Monell,* 436 U.S. at 694–95, 98 S.Ct. at 2037–38; *Springfield v. Kibbe,* 480 U.S. 257, 267, 107 S.Ct. 1114, 1119, 94 L.Ed.2d 293 (1987)).

In *Collins,* the Supreme Court explained the scope of municipal liability as follows:

> In *Monell [v. New York City Dep't of Social Serv.,* 436 U.S. 658 [, 98 S.Ct. 2018, 56 L.Ed.2d 611] (1978) ], the Court held that Congress intended municipalities and other local governmental entities to be included among those persons to whom § 1983 applies. 436 U.S., at 690, 98 S.Ct., at 2035. At the same time, the Court made it clear that municipalities may not

be held liable "unless action pursuant to official municipal policy of some nature caused a constitutional tort." *Id.,* at 691, 98 S.Ct., at 2036. The Court emphasized that

> "a municipality cannot be held liable *solely* because it employs a tortfeasor— or, in other words, a municipality cannot be held liable under § 1983 on a *respondeat superior* theory. . . .
>
> "[T]herefore, . . . a local government may not be sued under § 1983 for an injury inflicted solely by its employees or agents. Instead, it is when execution of government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983." *Id.,* at 691, 694, 98 S.Ct., at 2037–2038 (emphasis in original).

*Collins,* 503 U.S. at 122, 112 S.Ct. at 1066. *See also Jett v. Dallas Indep. Sch. Dist.,* 491 U.S. 701, 736, 109 S.Ct. 2702, 2723, 105 L.Ed.2d 598 (1989) (no *respondeat superior* liability against a municipality for § 1983 claims); *Owen v. City of Independence, Mo.,* 445 U.S. 622, 635, 100 S.Ct. 1398, 1407, 63 L.Ed.2d 673 (1980) (§ 1983 liability reaches "municipal corporations as well as natural 'persons,'" citing, *Monell*). "Municipal liability under § 1983 attaches where—and only where—a deliberate choice to follow a course of action is made from among various alternatives by the official or officials responsible for establishing final policy with respect to the subject matter in question." *Pembaur v. Cincinnati,* 475 U.S. 469, 483–84, 106 S.Ct. 1292, 1299–1300, 89 L.Ed.2d 452 (1986). "[A] person acts under color of state law only when exercising power 'possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law.'" *Polk County v. Dodson,* 454 U.S. 312, 317–18, 102 S.Ct. 445, 449, 70 L.Ed.2d 509 (1981), (quoting *United States v. Classic,* 313 U.S. 299, 326, 61 S.Ct. 1031, 1043, 85 L.Ed. 1368 (1941)). Decisions of the Eighth Circuit Court of Appeals reflect these standards. *See, e.g., Coleman v. Watt,* 40 F.3d 255, 257 (8th Cir.1994) (citing standards from *Monell*); *Frey v. City of Herculaneum,*

*Mo.,* 37 F.3d 1290 (8th Cir.1994) (no *respondeat superior* liability against a municipality for § 1983 claims); *McGautha v. Jackson County, Mo. Collections Dep't,* 36 F.3d 53, 55–56 (8th Cir.1994) (citing the standards stated in *Monell, Jett,* and *Pembaur*).

▪ Where official policy is lacking, municipal liability may be established "through proof that the alleged misconduct was so pervasive among the non-policy making employees of the municipality 'as to constitute a "custom or usage" with the force of law.'" *McGautha,* 36 F.3d at 56 (quoting *Monell*); *Jiles v. Ingram,* 944 F.2d 409, 413 (8th Cir.1991) ("Disparate treatment by a governmental entity may be proved by pattern and practice evidence."); *Catlett v. Missouri Highway & Transp. Comm'n,* 828 F.2d 1260, 1265 (8th Cir.1987), *cert. denied,* 485 U.S. 1021, 108 S.Ct. 1574, 99 L.Ed.2d 889 (1988). The rationale for this requirement is that it prevents a municipality from escaping liability by improperly delegating policy-making responsibility. *Id.* 36 F.2d at 57; *Jiles,* 944 F.2d at 413 (wrong-doing does not have to be by named defendants in order for city to be held liable). Although municipal liability for violating federal constitutional rights may arise from a single act of a policy maker, *see Pembaur,* 475 U.S. at 481–84, 106 S.Ct. at 1299–1300; *McGautha,* 36 F.3d at 56; *Angarita v. St. Louis County,* 981 F.2d 1537, 1546 (8th Cir.1992), municipal liability for an unconstitutional custom or usage cannot arise from a single act. *McGautha,* 36 F.3d at 56 (citing *Wedemeier v. City of Ballwin,* 931 F.2d 24, 26 (8th Cir.1991)). Authority as to specific personnel decisions does not necessarily rise to the level of final policy making authority. *McGautha,* 36 F.3d at 56 (citing *City of St. Louis v. Praprotnik,* 485 U.S. 112, 128–30, 108 S.Ct. 915, 926–27, 99 L.Ed.2d 107 (1988) (plurality opinion); *Pembaur,* 475 U.S. at 481–84, 106 S.Ct. at 1299–1300). Designation of the official or body responsible for the challenged policy is a matter of state law determined by the court. *Id.* (citing *Jett,* 491 U.S. at 737, 109 S.Ct. at 2723; *Praprotnik,* 485 U.S. at 124, 108 S.Ct. at 925). The Eighth Circuit Court of Appeals has held, however, that where a person heads a governmental department, and is responsible for

day-to-day operations, but merely exercises discretion in carrying out officially pronounced policy of the governmental unit, the person does not wield policy-making authority of the type imputable to the governmental unit. *Id.* (citing *Angarita*, 981 F.2d at 1546; *Church v. City of Huntsville*, 30 F.3d 1332, 1343 (11th Cir.1994)).

 Thus, even if Iowa Code Ch. 670 provided Dubuque County with some immunity in these proceedings, that immunity and municipal liability despite that immunity would each extend only as far as federal law provides. However, the court concludes that no state law attempting to establish municipal immunity is applicable to this federal lawsuit based on federal claims in which only federal defenses are relevant. *Howlett*, 496 U.S. at 375–376, 110 S.Ct. at 2442; *Owen*, 445 U.S. at 647 n. 30, 100 S.Ct. at 1413. n. 30. The affirmative defense of the Dubuque County employees founded on statutory immunity provided by Iowa Code Ch. 670 must be stricken.

### III. CONCLUSION

The court concludes that the affirmative defenses found in the answers of the Dubuque County defendants, although somewhat inartful in their references to "good faith," should be construed as pleading qualified immunity. However, any affirmative defense founded on subjective "good faith" must be stricken, as the appropriate test for qualified immunity of government officials is one of objective reasonableness. Contrary to Jaeger's assertions, the court concludes that qualified immunity defenses, when those defenses are properly grounded in the objective reasonableness of the defendants' conduct, are plainly relevant to this action asserting that defendants violated plaintiff's constitutional rights in the course of defendants' conduct of discretionary functions of their government employment. The court concludes further that the DNR officials, as government officials performing discretionary functions, are entitled to raise a qualified immunity defense. However, the court concludes that the Dubuque County defendants have improperly pleaded a state statutory immunity defense to a federal claim gov-

erned by federal law. Thus, the defendants' affirmative defense founded on Iowa Code Ch. 670 must be stricken. Jaeger's motions to strike must therefore be granted in part and denied in part as stated above.

**IT IS SO ORDERED.**